UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIAM EDWARD DENNIS,

    Petitioner,

v.

CASE NO. 2:18-cv-12197
HONORABLE SEAN F. COX

SHERRY L. BURT,

    Respondent.
_____/

# OPINION AND ORDER
# DENYING PETITIONER'S MOTION TO LIFT THE STAY [Dkt. #12],
# DENYING THE MOTIONS TOAMEND THE HABEAS PETITION [Dkt. #13 and #19],
# DISMISSING THE HABEAS PETITION [Dkt. #1] WITH PREJUDICE,
# DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND
# GRANTING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL

On July 13, 2018, petitioner William Edward Dennis filed a *pro se* habeas corpus petition challenging his Michigan convictions for criminal sexual conduct. His sole ground for relief was that his trial attorney was ineffective for failing to present an adequate alibi defense. Petitioner subsequently asked the Court to hold his petition in abeyance, and after the Court denied Petitioner's requests for a stay, Petitioner moved to amend his petition to add more claims and to lift what he thought was a stay of the case. Respondent Sherry L. Burt then filed an answer to the petition in which she argued that Petitioner's claim about trial counsel was both time-barred and meritless and that Petitioner's proposed new claims also would be barred by the statute of limitations. The Court directed Respondent to file a supplemental brief, and after Respondent filed her supplemental brief, Petitioner filed another motion to amend his petition. The Court agrees with Respondent that Petitioner's initial claim and his proposed new claims are barred by the

statute of limitations. Accordingly, the Court will dismiss the petition and deny Petitioner's pending motions to lift the stay and to amend the petition to add more claims.

## I. Background

### A. The Conviction, Sentence, and Direct Appeal

Petitioner was charged in Wayne County, Michigan with three counts of first-degree criminal sexual conduct and three counts of third-degree criminal sexual conduct. The charges arose from allegations that he engaged in sexual activity with his niece from approximately June 14, 2001, when the girl became thirteen years old until sometime in 2003 when she was fifteen years old. The complainant did not disclose the abuse at the time because Petitioner intimidated her, and she was afraid of him. She ultimately told a boyfriend and a psychologist about the abuse and then went to the police in 2012. At Petitioner's trial in Wayne County Circuit Court,

> the jury heard testimony from, among others: the victim, her brother, her cousin,[1] and defendant himself. The victim told the jury that defendant molested her at her grandmother's house multiple times over a period of years, and that the molestation followed a pattern. Defendant would provide alcohol and marijuana to her, her brother, and her cousin, and thereafter would sexually assault her. On at least one occasion, defendant put his penis in her mouth and raped her.
>
> The victim's brother and cousin largely corroborated the victim's testimony. Both explained that defendant gave them alcohol and drugs, and that they witnessed defendant behaving suspiciously around the victim.[2] The victim's cousin also stated that defendant told her he had extensive sexual contact with the victim, but he defended his conduct by stating that: (1) the victim was supposedly 17 at the time; and (2) "I was drunk, she was drunk, [and] she was taking her clothes off."

---

[1] The victim's cousin is defendant's daughter.

[2] Specifically, the victim's cousin said that she witnessed defendant "masturbating at the end of [his] bed while [the victim] was laying with her butt in the air on his bed." The victim's brother recalled an incident where the victim had been sitting in defendant's bed with defendant, while the victim was not wearing underwear.

> Defendant testified on his own behalf and denied that he had any sexual contact with the victim. He also asserted that he never supplied alcohol or marijuana to the victim, her brother, or her cousin. Defendant further implied that he could not have committed the alleged molestation because his work schedule at the time required him to be away from his mother's house during most evenings.

*People v. Dennis*, No. 321191, 2015 WL 4990874, at *1 (Mich. Ct. App. Aug. 20, 2015) (footnotes in original).

The trial court dismissed one count of third-degree criminal sexual conduct during the trial, and on March 6, 2014, the jury found Petitioner found guilty of two counts of first-degree criminal sexual conduct, Mich. Comp. Laws § 750.520b(1)(b), and one count of third-degree criminal sexual conduct, Mich. Comp. Laws § 750.520d(1). The jury acquitted Petitioner of the remaining counts (one count of first-degree criminal sexual conduct and one count of third-degree criminal sexual conduct). On March 20, 2014, the trial court sentenced Petitioner to concurrent terms of seventeen and a half to thirty years in prison for the first-degree convictions and seven to fifteen years for the third-degree conviction.

Petitioner appealed his convictions, raising two claims of ineffective assistance of trial counsel. In his first claim, he argued that trial counsel was ineffective for (a) failing to file a notice of alibi, (b) failing to request the alibi jury instruction, (c) ignoring critical alibi evidence, and (d) failing to properly cross-examine his daughter regarding his alibi of not being present in Michigan at the time of the alleged events. In his second claim, Petitioner argued that the trial court erred by not dismissing all the third-degree criminal-sexual-conduct charges on the basis that the ten-year statute of limitations had run on those claims. Petitioner also claimed that trial counsel was ineffective for failing to move for a directed verdict of acquittal on the third-degree charges. The Michigan Court of Appeals found no merit in Petitioner's claims and affirmed his convictions in

3

an unpublished, *per curiam* opinion. *See Dennis*, 2015 WL 4990874. On March 8, 2016, the Michigan Supreme Court denied leave to appeal because it was not persuaded to review the issues. *See People v. Dennis*, 875 N.W.2d 214 (Mich. 2016) (table decision).

### B. The Motion for Relief from Judgment, Appeal to the Michigan Court of Appeals, and First Habeas Corpus Petition

On March 9, 2017, Petitioner raised six issues in a motion for relief from judgment. He argued through counsel that: (1) the trial court improperly classified the complainant as a victim; (2-5) trial counsel was ineffective for (a) failing to conduct any pretrial investigative interviews of prosecution witnesses, (b) failing to investigate and introduce exculpatory records that he resided in Pennsylvania from September 2000 through at least May 2002, (c) failing to introduce a photograph on which the complainant expressed her love for him, and (d) admitting that "something must have happened;" and (6) appellate counsel was "cause" for failing to raise these constitutional violations on direct appeal.

The trial court denied Petitioner's motion after concluding that it was precluded from considering Petitioner's claims about trial counsel because he raised those issues on appeal and that Petitioner's claims about the trial court and appellate counsel lacked merit. The court also stated that Petitioner had not shown "good cause" under Michigan Court Rule 6.508(D)(3) for not raising all his claims on appeal and "actual prejudice" from the claimed errors. *See* Op. and Order, *People v. Dennis*, No. 13-009869-01 (Wayne Cty. Cir. Ct. Aug. 10, 2017).

On March 28, 2018, Petitioner filed a *pro se* delayed application for leave to appeal the trial court's decision. While the delayed application was pending in the Michigan Court of Appeals, Petitioner filed a habeas corpus petition that was assigned to another judge in this District. Petitioner signed that petition on April 15, 2018. In a subsequent letter to the Court, Petitioner

asked the assigned judge to disregard his petition because his mother had mistakenly filed the petition before he could exhaust his state remedies. He also stated that he would be filing another petition once he exhausted all his state remedies. *See Dennis v. Burt*, No. 2:18-cv-11336, Letter from William E. Dennis, Dkt. #3 (E.D. Mich. May 3,2018). The case was summarily dismissed on May 10, 2018, at Petitioner's request. *See id.*, Order, Dkt. #4, and Judgment, Dkt. #5.

On May 22, 2018, the Michigan Court of Appeals dismissed Petitioner's appeal because he failed to file his delayed application within the time required by Michigan Court Rule 7.205(G)(3). *See People v. Dennis*, No. 343697 (Mich. Ct. App. May 22, 2018). On June 5, 2018, the Michigan Court of Appeals filed a similar order dismissing the delayed application for leave to appeal the trial court's decision. *See People v. Dennis*, No. 343973 (Mich. Ct. App. June 5, 2018).

### C. The Appeal to the Michigan Supreme Court, the Current Petition, Respondent's Answer and Supplemental Brief, Petitioner's Replies, and Petitioner's Second Motion to Amend

Petitioner did not appeal the June 5, 2018, order of the Michigan Court of Appeals. *See* Affidavit of Larry Royster, Clerk for the Michigan Supreme Court, Dkt. #15-13. He did appeal the May 22, 2018, order of the Michigan Court of Appeals, and while that appeal was pending in the Michigan Supreme Court, this Court received Petitioner's current habeas corpus petition. The petition was signed on April 15, 2018, but it was received and filed by the Clerk of Court on July 13, 2018.

Petitioner subsequently filed two applications to hold his habeas petition in abeyance while he continued to exhaust state remedies for the issues that he raised in his motion for relief from judgment. *See* Applications, Dkt. #7 and #9. While those applications remained pending, the

Michigan Supreme Court denied Petitioner's application for leave to appeal the Michigan Court of Appeals decision dated May 22, 2018. *See People v. Dennis*, 919 N.W.2d 785 (Mich. 2018) (table decision). Accordingly, this Court declined to hold the habeas petition in abeyance. *See* Order, Dkt. #11.

Petitioner then moved to lift what he thought was a stay of this case. He also moved to amend his habeas petition to include the claims that he presented to the state court in his motion for relief from judgment. *See* Mot. to Lift Stay, Dkt. #12, and Mot. to Amend Pet., Dkt. #13.

Respondent subsequently filed an answer to the habeas petition in which she argues that consideration of Petitioner's habeas petition is barred by the statute of limitations and that the state appellate court's rejection of Petitioner's initial claim about trial counsel was objectively reasonable. Respondent also contends that the claims which Petitioner raised in his motion for relief from judgment would be barred by the statute of limitations if he were permitted to amend his petition to include those claims. *See* Dkt. #14. Petitioner filed a reply in which he asserted that his claims were meritorious and timely. *See* Dkt. #16.

The Court then asked Respondent to file a supplemental brief regarding application of the statute-of-limitations. *See* Dkt. #17. After Respondent filed a supplemental brief, *see* Dkt. #18, Petitioner moved to amend his petition. *See* Dkt. #19. He claimed that he was actually innocent and, therefore, the Court should excuse any failure to comply with the statute of limitations and review his claims on the merits.

The basis for Petitioner's claim of actual innocence is his contention that he was living and working in Pennsylvania from September 10, 2000, to at least March 1, 2002. He contends that this proves his innocence, because the complainant testified that Petitioner first assaulted her

before or after her thirteenth birthday on June 14, 2001. Petitioner also contends that his trial and appellate attorneys were ineffective for failing to investigate and use documents that demonstrate he was residing in Pennsylvania in 2001 and that his daughter was also living there for most of that time.

## II. Analysis

### A. The Statute of Limitations

The habeas petition is subject to the stringent provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") because Petitioner filed the petition after AEDPA became effective in 1996. *Davis v. Bradshaw*, 900 F.3d 315, 323 (6th Cir. 2018), *cert. denied*, 139 S. Ct. 1619 (2019). AEDPA established a one-year period of limitations for state prisoners to file their federal habeas corpus petitions. *See* 28 U.S.C. § 2244(d)(1); *see also Wall v. Kholi*, 562 U.S. 545, 550 (2011); *Davis*, 900 F.3d at 323; *Holbrook v. Curtin*, 833 F.3d 612, 615 (6th Cir. 2016), *cert. denied sub nom Woods v. Holbrook*, 137 S. Ct. 1436 (2017). The limitations period runs from the latest of the following four dates:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). "AEDPA also contains a tolling provision, which specifies that '[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.'" *Holbrook*, 833 F.3d at 615 (quoting 28 U.S.C. § 2244(d)(2)).

The relevant subsection here is § 2244(d)(1)(A), which states that a conviction becomes final at "the conclusion of direct review or the expiration of the time for seeking such review." The Supreme Court has explained that,

> [f]or petitioners who pursue direct review all the way to [the Supreme] Court, the judgment becomes final at the "conclusion of direct review"—when [the Supreme] Court affirms a conviction on the merits or denies a petition for certiorari. For all other petitioners, the judgment becomes final at the "expiration of the time for seeking such review"—when the time for pursuing direct review in [the Supreme] Court, or in state court, expires.

*Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012).

Petitioner did not apply for a writ of certiorari in the United States Supreme Court after the Michigan Supreme Court denied leave to appeal on direct review, and the deadline for doing so expired on June 6, 2016, ninety days after the Michigan Supreme Court's order dated March 8, 2016. *See* Sup. Ct. R. 13.1 (stating that a petition for writ of certiorari to review a judgment entered by a state court of last resort is timely if filed within ninety days after entry of the judgment). Thus, under *Gonzalez,* Petitioner's convictions became final on June 6, 2016.

The statute of limitations began to run on the following day, Fed. R. Civ. P. 6(a)(1)(A); *Miller v. Collins*, 305 F.3d 491, 495 n.4 (6th Cir. 2002), and it continued to run for nine months, that is, until March 9, 2017, when Petitioner filed his motion for relief from judgment in the state trial court. The limitation period was tolled from the time Petitioner filed his motion until August

8

10, 2017, when the state trial court denied the motion. 28 U.S.C. § 2244(d)(2). The limitation period also was tolled for the six months during which Petitioner could have appealed the trial court's decision, that is, until February 10, 2018. *See* Mich. Ct. R. 6.509(A) (establishing a six-month time limit for filing an appeal from the denial of a motion for relief from judgment); *Holbrook*, 833 F.3d at 619 (noting that AEDPA's one-year statute of limitations was tolled during the period in which the habeas petitioner could have, but did not, appeal the denial of his motion for post-conviction relief).

About a month and a half after the deadline expired for appealing the trial court's order on Petitioner's motion for relief from judgment, Petitioner filed a *pro se* delayed application for leave to appeal. On May 22, 2018, and again on June 5, 2018, the Michigan Court of Appeals dismissed Petitioner's appeal as untimely. *See People v. Dennis,* No. 343697 (Mich. Ct. App. May 22, 2018); *People v. Dennis*, No. 343973 (Mich. Ct. App. June 5, 2018).

### B. The Impact of the Late Appeal to the Michigan Court of Appeals

Ordinarily, the limitations period is tolled during the entire time that a post-conviction motion and subsequent appeals are pending in state court. 28 U.S.C. § 2244(d)(2); *Carey v. Saffold*, 536 U.S. 214, 219-20 (2002) ("[A]n application is pending as long as the ordinary state collateral review process is 'in continuance'— *i.e.*, 'until the completion of' that process. In other words, until the application has achieved final resolution through the State's post-conviction procedures, by definition it remains 'pending.' "). Petitioner, therefore, maintains that the statute of limitations was tolled under § 2244(d)(2) until December 4, 2018, when the Michigan Supreme Court denied leave to appeal on collateral review of his convictions.

A motion for state post-conviction review, however, must be "properly filed" for it to toll the limitation period, 28 U.S.C. § 2244(d)(2), "[a]nd an application is '*properly* filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings." *Artuz v. Bennett*, 531 U.S. 4, 8 (2000) (emphasis in original). Such rules usually prescribe, among other things, "the time limits upon its delivery." *Id*. Thus, "only a *timely* appeal tolls AEDPA's 1-year limitations period for the time between the lower court's adverse decision and the filing of a notice of appeal in the higher court." *Evans v. Chavis*, 546 U.S. 189, 197, (2006) (emphasis in original). "When a postconviction petition is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)." *Pace v. DiGuglielmo*, 544 U.S. 408, 414 (2005) (quoting *Saffold*, 536 U.S. at 226). In other words, "untimely state collateral attacks are not properly filed and do not toll the statute of limitations." *Raglin v. Randle*, 10 F. App'x 314, 315 (6th Cir. 2001).

On state collateral review in Petitioner's case, the Michigan Court of Appeals dismissed Petitioner's application for leave to appeal as untimely. The Michigan Supreme Court's subsequent denial of leave to appeal is presumed to rest on the same ground. *Palmer v. Lavigne*, 43 F. App'x 827, 829 (6th Cir. 2002). Therefore, the limitations period was not tolled after the expiration of the time for appealing the trial court's decision on Petitioner's motion for relief from judgment. Instead, the limitations period resumed running on February 11, 2018, the day after the period expired for appealing the state court's decision. Because the limitations period had already run nine months at that point, it expired three months later, on or about May 11, 2018. Petitioner filed his current habeas petition two months later on July 13, 2018.[1] His habeas petition and all

---

[1] The petition is dated April 15, 2018, and under the "prison mailbox rule" of *Houston v. Lack*, 487 U.S. 266, 276 (1988), a habeas petition ordinarily is considered filed on the date when the

the proposed new claims are untimely, absent equitable tolling or a credible claim of actual innocence.

## C. Equitable Tolling

AEDPA's statute of limitations "is subject to equitable tolling in appropriate cases." *Holland v. Florida*, 560 U.S. 631, 645 (2010). However, a habeas petitioner "is 'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Id*. at 649 (quoting *Pace*, 544 U.S. at 418).

---

prisoner provides the petition to prison officials for filing. *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 456 (6th Cir. 2012).

> Cases expand the understanding of this handing-over rule with an assumption that, absent contrary evidence, a prisoner does so on the date he or she signed the complaint. *See, e.g., Goins v. Saunders*, 206 Fed. Appx. 497, 498 n. 1 (6th Cir. 2006) (*per curiam*) ("[W]e treat the petition as filed on the date [the prisoner] signed it."); *Bomer v. Bass*, 76 Fed. Appx. 62, 63 (6th Cir. 2003) (order); *Towns v. United States*, 190 F.3d 468, 469 (6th Cir. 1999) (order).

*Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008).

In the present case, however, Petitioner alleges that his mother mailed his first petition to the Court. *See* Petitioner's Reply to Respondent's Supplemental Brief, Dkt. 20. It appears that Petitioner's mother also mailed the current petition to the Court, because it was sent in the same manner (by priority mail) from his mother's zip code area (48164), not the zip code area for Petitioner's current address (49442). *Cf. Dennis v. Burt*, No. 18-11336, Pet. for Writ of Habeas Corpus, Dkt. #1, PageID. 69 (E.D. Mich. Apr. 27, 2018), with *Dennis v. Burt*, No. 18-12197, Pet. for Writ of Habeas Corpus, Dkt. #1, PageID. 69 (E.D. Mich. July 13, 2018). "[T]he common law mailbox rule is inapplicable to the filing of habeas petitions to third parties, as intermediaries, who then mail them to the court for filing." *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002). Consequently, the Court is treating the current petition as filed on July 13, 2018.

Petitioner alleges that his untimely appeal on state collateral review was due to his post-conviction attorney's failure to inform him that the state trial court had denied his motion for relief from judgment. The Supreme Court, however, has stated that, while an attorney's unprofessional conduct can be egregious and create an extraordinary circumstance warranting equitable tolling of a statute of limitations, "a garden variety claim of excusable neglect" that leads to missing a filing deadline does not warrant equitable tolling. *Id.* at 651-52; *accord Martin v. Hurley*, 150 F. App'x 513, 516 (6th Cir. 2005) ("[A]ttorney error is an inadequate justification for equitable tolling in this circuit."); *Whalen v. Randle*, 37 F. App'x 113, 120 (6th Cir. 2002) ("In general, . . . a lawyer's mistake is not a valid basis for equitable tolling."); *Elliott v. Dewitt*, 10 F. App'x 311, 313 (6th Cir. 2001) ("[A]n attorney's mistake which results in missing the filing deadline imposed by the AEDPA is not a basis for equitable tolling."); *see also LaCava v. Kyler,* 398 F.3d 271, 276 (3rd Cir. 2005) (concluding that an attorney's failure to timely notify the petitioner of the state court's disposition of his application for permission to appeal was not an extraordinary circumstance sufficient to warrant equitable tolling.). An attorney's negligence is "constructively attributable to the client and thus is not a circumstance beyond the litigant's control." *Holland,* 560 U.S. at 657. The Court, therefore, concludes that the post-conviction attorney's alleged negligence in failing to inform Petitioner of the trial court's decision on his post-conviction motion did not amount to egregious behavior entitling Petitioner to equitable tolling of the limitations period.

### D. Actual Innocence

In his recent motion to amend, Petitioner urges the Court to address his claims on the merits because he is actually innocent of charges for which he is incarcerated. Actual innocence, if proved, serves as a gateway through which habeas petitioners may pass when the impediment to

consideration of the merits of their constitutional claims is expiration of the statute of limitations. *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013). The Supreme Court has cautioned, however, "that tenable actual-innocence gateway pleas are rare: '[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of . . . new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.' " *Id*. (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)). "To be credible, [a claim of actual innocence] requires [the] petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324.

Petitioner has presented the Court with employment and financial records that his mother supposedly discovered after Petitioner's trial. The records show that Petitioner was working, residing, and paying bills in Pennsylvania during 2001 when, according to the complainant, Petitioner first assaulted her. The complainant, however, testified that the abuse continued until sometime in 2003 when she was fifteen years old, *see* 3/4/14 Trial Tr. at 67-68, and her grandmother testified that the complainant was still visiting her and Petitioner occasionally in 2003, *id*. at 228. Petitioner himself testified that he moved back to his mother's home in August or September of 2003. *See* 3/5/14 Trial Tr. at 29. Thus, Petitioner's employment and financial records from 2001 and early 2002 are not a complete alibi, and a reasonable juror could have voted to find Petitioner guilty beyond a reasonable doubt despite the new evidence. Petitioner is not entitled to pass through the actual-innocence gateway and have his claims heard on the merits.

### III. Conclusion

For the reasons set forth above, Petitioner's habeas petition and his proposed new claims are untimely. Petitioner is not entitled to equitable tolling of the limitations period, and his claim of actual innocence is not tenable.

Accordingly,

**IT IS ORDERED** that the habeas petition, Dkt. #1, is **DISMISSED** as untimely, and the motions to amend the petition to include additional claims, Dkt. #13 and Dkt. #19, are **DENIED**.

**IT IS FURTHER ORDERED** that the motion to lift the stay, Dkt. #12, is denied as moot because the case was never stayed.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED** because reasonable jurists could not find it debatable whether the Court's procedural ruling is correct or whether the petition states a valid claim of the denial of a constitutional right. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). An appeal from the Court's decision, however, could be taken in good faith. Therefore,

**IT IS FURTHER ORDERED** that Petitioner may proceed *in forma pauperis* if he appeals this decision. 28 U.S.C. § 1915(a)(3).

Dated: September 16, 2019         s/Sean F. Cox
                                  Sean F. Cox
                                  U. S. District Judge